**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**In Re:**                                                      **Bankruptcy No.** 18-23979 GLT
Lawson Nursing Home, Inc.,                          **Chapter** 11
                                    **Debtor.**        **Document No.**

_____

**CHAPTER 11 SMALL BUSINESS LIQUIDATING PLAN**

_____

**Donald R. Calaiaro, Esquire**
**PA I.D. #27538**
**CALAIARO VALENCIK**
**428 Forbes Avenue, Suite 900**
**Pittsburgh, PA  15219-1621**
**(412) 232-0930**
**dcalaiaro@c-vlaw.com**

**DATED:** April 22, 2019

1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**In Re:**                                    **Bankruptcy No.** 18-23979 GLT
Lawson Nursing Home, Inc.,                    **Chapter** 11
**Debtor.**                                   **Document No.**

## CHAPTER 11 SMALL BUSINESS LIQUIDATING PLAN OF REORGANIZATION

**Lawson Nursing Home, Inc.,** a Debtor-In-Possession, proposes the following

Liquidating Plan of Reorganization ("Plan") pursuant to Section 1121(b) and (c) of the

Bankruptcy Code ("Code"). 11 U.S.C. §§ 1121(b), (d);

## ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless

the context otherwise requires, the following capitalized terms shall have the meaning set

forth below:

**1.1**    Administrative Claims: shall mean the costs and expenses of administration

of this Chapter 11 case allowed under Section 503(b) and entitled to priority under Section

507(a)(1) of the Code.

**1.2**    Allowed Claim: shall mean a claim against the Debtor to the extent.

**a.**    A proof of such claim was:

**(1)**    Timely filed; or

**(2)**    Deemed filed pursuant to Section 1111(a) of the Bankruptcy
Code; or

**(3)**    Filed late with leave of the Bankruptcy Court after notice and
opportunity for hearing given to the Debtor's counsel; and

**b.**    **(1)**    Which is not a Disputed Claim; or

**(2)**    Which is allowed (and only to the extent allowed) by a Final
Order, after objection, if any, and hearing; and

2

    **c.**    **(1)**    With respect to any professionals seeking compensation in connection with this case, when said compensation has been allowed by Order of the Bankruptcy Court after notice and hearing as provided in the Bankruptcy Code.

**1.3** <u>Ballot:</u> The form distributed, together with the Disclosure Statement, to the holders of Claims in Classes that are impaired and entitled to vote on this Plan for purpose of indicating acceptance or rejection of this Plan.

**1.4** <u>Bankruptcy Code:</u> Title 11 of the United States Code, as amended from time to time, as applicable to Chapter 11 cases.

**1.5** <u>Bankruptcy Court:</u> shall mean that unit of the United States District Court for the Western District of Pennsylvania known as the United States Bankruptcy Court for the Western District of Pennsylvania located at 54th Floor, USX Tower, Pittsburgh, Pennsylvania, 15219, or any Court having jurisdiction to hear and determine appeals there from.

**1.6** <u>Claim:</u> shall have the meaning set forth in Section 101(4) of the Bankruptcy Code.

**1.7** <u>Class:</u> shall mean the category of holders of claims or equity interests in such category as provided by 11 U.S.C. § 1122 of the Code, each such Class being more fully defined in Article 3 of the Plan.

**1.8** <u>Common Stock:</u> shall mean the shares of common stock of **Lawson Nursing Home, Inc.**

**1.9** <u>Confirmation Date:</u> shall mean the date when the clerk of the Bankruptcy Court shall have entered the Confirmation Order on the docket.

**1.10** <u>Confirmation Order:</u> shall mean the Order entered by the Bankruptcy Court

confirming the Plan pursuant to Section 1129 of the Code.

**1.11** <u>Convenience Claim:</u> **Deleted**

**1.12** <u>Creditor:</u> shall mean any person having a claim against the Debtor that arose on or before the filing date or a claim against the Debtor's estate of a kind specified in Section 502(g)(h) or (I) of the Code.

**1.13** <u>Creditor's Committee:</u> The Official Committee of Unsecured Creditors appointed in these Chapter 11 cases pursuant to Section 1102(a) of the Bankruptcy Code, as may be constituted from time to time. **A Creditor's Committee was not formed.**

**1.14** <u>Disbursing Agent:</u> shall mean Donald R. Calaiaro with an address of 20 Warriors Road, Pittsburgh, PA 15205, or his designee in the event of his death or disability.

**1.15** <u>Disclosure Statement:</u> shall mean the Disclosure Statement of the Debtor, and filed with and approved by the Court pursuant to Section 1125 of the Code.

**1.16** <u>Effective Date of the Plan:</u> shall mean the 61st day after the order of confirmation becomes final; provided no appeal has been taken from that order.

**1.17** <u>Equity Interests:</u> shall mean all the interests and claims held by holders of common shares of Blalock Electric Service, Inc. prior to confirmation.

**1.18** <u>Filing Date:</u> shall mean **October 10, 2018,** the date on which Lawson Nursing Home, Inc., filed its petition for reorganization with the Bankruptcy Court.

**1.19** <u>Final Order:</u> shall mean an order, judgment or decree of the Bankruptcy Court as to which **(a)** any appeal that has been timely taken has been finally determined or dismissed; **(b)** the time for appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule; or **(c)** an appeal has been timely taken, but such Order has not been

stayed by appropriate cash bond or equivalent under Rule 8005 of the Rules of Bankruptcy Procedure.

**1.20**   Fiscal Quarter: shall mean a three-month period ending on the last day of March, June, September or December as the appropriate case may be.

**1.21**   Impaired: Any Class of Claims or Interests that is Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.22**   Plan: shall mean this Chapter 11 Small Business Liquidating Plan dated **April 22, 2019,** as the same may be amended or modified from time to time in accordance with the provisions of this Plan and Section 1127 of the Code, all addenda, exhibits, schedules, Releases and other attachments hereto, all of which are incorporated herein by reference as though fully set forth herein.

**1.23**   Priority Claim: shall mean any claim entitled to priority pursuant to Section 507(a) **(1)** [Administrative]; **(2)** [Wages]; **(3)** [Employee Benefits], of the Code to the extent it is an allowed claim; except for priority tax claims.

**1.24**   Priority Tax Claim: shall mean any claim entitled to priority pursuant to Section 507(a) (7) of the Code to the extent it is an allowed claim.

**1.25**   Priority Wage Claim: shall mean any claim entitled to priority in payment under Section 507(a) (3) or (4) of the Code, to the extent it is an allowed claim.

**1.26**   Tax Attributes: shall mean any right or claim for credits that the Debtor has as of the date of confirmation of the Plan.

**1.27**   Proponent of this Plan: shall mean **Lawson Nursing Home, Inc.**

**1.28**   Schedules: shall mean the schedules of assets and liabilities filed by Lawson Nursing Home, Inc. with the Bankruptcy Court as required by Section 521 of the Code, and

any amendments thereto as allowed by the Bankruptcy Court.

**1.29**    Secured Claim: shall mean an allowed claim in respect of which a security interest is held in or against any property of the Debtor's estate, to the extent of the value of such creditor's interest in the estate's interest in such property; and to the extent the claim is perfected against a trustee under 11 U.S.C. § 544.  If the value of such creditor's interest is less than the amount of the allowed claim held by it, then such creditor shall hold an unsecured claim for the deficiency amount; if the creditor's claimed security is not perfected, it will have an unsecured claim; but only to the extent the creditor has filed a claim.

**1.30**    Secured Creditor: shall mean any person, which holds a secured claim.

**1.31**    Security Interest: shall mean a lien; as such term is defined in Section 101(33) of the Code on any of the property of the Debtor's estate.

**1.32**    Unimpaired:  Any Class of Claims or Interests that is not impaired by this Chapter 11 Small Business Liquidating Plan within the meaning of Section 1124 of the Bankruptcy Code.

**1.33**    Unsecured Claim: shall mean any claim other than an administrative claim; secured claim or a priority claim to the extent it is an allowed claim.

**1.34**    Gender and Number: when used herein, words importing any gender may be applied to and include all persons; words importing the plural number may be applied to and mean a single person or thing, and words importing the singular number may be applied to and mean more than single person or thing.

**1.35**    General Rule of Interpretation: unless otherwise defined herein, all terms used in this Plan shall have the meanings set forth in the Bankruptcy Code.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS INTO CLASSES

| | | |
|---|---|---|
| **2.1** | Class 1 - Administrative Claims | [Unimpaired] |
| **2.2** | Class 2 – Huntington National Bank | [Impaired] |
| **2.3** | Class 3 – Johnson Pharmaceutical Services, Inc. | [Impaired] |
| **2.4** | Class 4 – Secured Tax Claims | [Impaired] |
| **2.5** | Class 5 – Everest Business Funding | [Impaired] |
| **2.6** | Class 6 – Bankdirect Capital Finance | [Impaired] |
| **2.7** | Class 7 – Bridgeport Capital Funding, LLC | [Impaired] |
| **2.8** | Class 8 – BFS Capital | [Impaired] |
| **2.9** | Class 9 – Priority Tax Claims | [Impaired] |
| **2.10** | Class 10 – Executory Contracts | [Impaired] |
| **2.11** | Class 11 – General Unsecured Creditors | [Impaired] |
| **2.12** | Class 12 – Equity Shareholders | [Impaired] |

## ARTICLE 3 - DESIGNATION OF CLASSES

**3.1** Class 1 shall consist of fees to the U.S. Trustee; the Clerk of Courts and any professional's fees which are entitled to priority under 11 U.S.C. § 507(a)(1).  These shall include the following:

**(a)** Any attorney who successfully recovers any money on behalf of the estate 11 U.S.C. § (b) (3) (D).

**(b)** Attorneys for Debtor, Calaiaro Valencik

**(c)** Accountant for the Debtor.  11 U.S.C. § (b) (4).

This Class shall also include administrative expenses incurred during the Administration:

**(d)** Internal Revenue Service; if any.

**(e)** Claims for any unpaid ongoing expenses accrued during the course of the Debtor's operation; if any.

**(f)** All U.S. Trustee's fees and Clerk of Bankruptcy Court charges.

**(g)** Unpaid administrative rent, as allowed.

**(h)**      Class 1 shall also include the allowed administrative claims of Gordon Food Service, Inc. and Trilogy Mission RX, LLC d/b/a Pharmacy Care Advocates a/k/a PCA Mission Pharmacy. Each of the respective participants in this class filed applications for administrative expenses with the Court, Docket Nos. 136, 142, and the Court entered Ordered approving such applications, Docket Nos. 178, 185. These claims, pursuant to their respective Orders, are claims junior to lien held by HNB's Class 2 Claim. The respective administrative claims held by Gordon Food Service, Inc. and Trilogy Mission RX, LLC d/b/a Pharmacy Care Advocates a/k/a PCA Mission Pharmacy will be paid in this class only to the extent of their administrative claim. Any remaining unsecured claim will be paid with the rest of the Class 11 General Unsecured Creditors.

**(i)**      ***All gains or sales taxes on the sale of assets during the liquidation of the Debtors Assets***

All professional fees are subject to the Bankruptcy Court's approval under Section 330(a) (1) of the Bankruptcy Code and Bankruptcy Rule 2016(a); and only to the extent professionals preserved the estate.

**3.2     Class 2**     Class 2 shall consist of the secured claim held by **Huntington National Bank ("HNB")**. Prior to the filing of this Chapter 11 Bankruptcy, HNB extended to Debtor two security agreements on or about October 27, 2014. The first security agreement was a loan agreement in the principal amount of $643,330.11 ("HNB Loan Agreement"). The second security agreement was a line of credit note in the principal amount of $100,000.00 ("HNB Credit Agreement"). As part of the security for all of Debtor's obligations, debts and liabilities to HNB, Debtor granted HNB a blank security interest in the personalty and assets of Debtor, including without limitation inventory, chattel paper,

8

accounts, receivables, equipment, documents and general intangibles.

During the Chapter 11, Debtor and HNB entered into several Cash Collateral and

Adequate Protection Agreements, docketed at 21, 24, 27, 28, 66, 99, 100, 165, and 168

and this Court's Orders Approving such agreements, docketed at 31, 65, 69, 101, and 179

(collectively referred to as "Cash Collateral & Adequate Protection Agreements"). In

accordance with the Cash Collateral & Adequate Protection Agreements, it is agreed by

the Debtor that HNB holds a first priority lien on all the personal property of the Debtor as

of the Petition date.

**3.3** **Class 3**   Class 3 shall consist of the secured claim of Johnson

Pharmaceutical Services, Inc. ("Johnson"). Prior to the filing of the Chapter 11 Bankruptcy,

Johnson received a judgment against the Debtor in Allegheny County Court of Common

Pleas case number, GD-13-007161. The judgment was entered on March 21, 2014 in the

amount of $126,524.12. During the Chapter 11 bankruptcy, Johnson filed Proof of Claim

#17 in the amount of $67,536.93.  The Debtor consented to a revival of the judgment. The

revival was filed in the Common Pleas case on March 18, 2019.

**3.4** **Class 4**   Class 4 shall include the allowed Secured Tax Claims assessed

against the Debtor which were incurred prior to October 10, 2018. This class is limited to

the principal and interest components of these claims, as allowed. This class does not

include penalties assessed against the Debtor prior to the order for relief unless the

particular creditor has obtained on order of court allowing penalties because they do not

arise out of actual pecuniary loss. At the time of the filing of this Liquidating Plan, the

following are the listed Secured Tax Claims:

**Class 4 – Secured Tax Claims**

9

| Name of Creditor | Class | Type of Claim | Amount |
|---|---|---|---|
| Allegheny County POC #10 | 4 | Secured | $21,157.26 |
| Commonwealth of Pennsylvania, DOR POC #1 | 4 | Secured | $103.13 |
| Jefferson Hills Borough POC #5 | 4 | Secured | $11,685.43 |
| West Jefferson Hills School District POC #4 | 4 | Secured | $41,157.97 |
| TOTAL | | | $74,103.79 |

**3.5** **Class 5**   Class 5 shall include the claim held by Everest Business Funding. Prior to the bankruptcy, the Debtor and Everest Business Funding entered into a Sale and Purchase Agreement for all present and future receivables. The agreement was dated on April 4, 2018 and a UCC Financing Statement was filed on September 27, 2018 at Filing No. 2018092701169. Everest Business Funding received a judgment against the Debtor in the Supreme Court of the State of New York, County of Erie, Index No. 18815348, on October 2, 2018. During the Chapter 11 case, Everest Business Funding filed Proof of Claim #3 in the amount of $106,874.39.

**3.6** **Class 6**   Class 6 shall include the claim held by Bankdirect Capital Finance ("Bankdirect"). Prior to the filing, the Debtor and Bankdirect entered into a commercial insurance premium finance and security agreement to help finance the payments of their insurance premiums. During the Chapter 11 case, Bankdirect filed Proof of Claim #11 in the amount of $14,946.96. In their Proof of Claim, Bankdirect asserts that they have a security interest in the unearned insurance premiums.

**3.7** **Class 7**   Class 7 shall consist of Bridgeport Capital Funding, LLC. Bridgeport Capital Funding, LLC did not file a proof of claim in this bankruptcy. According to the Debtor's Petition, the value of this secured claim is $88,000.00 and the value of the collateral is $0.00. This creditor was scheduled as creditor 2.3 on schedule D of the bankruptcy schedules. This creditor did not file a proof of claim. The listed basis of this

10

claim is a business loan to the Debtor. This claim is listed as Disputed on the Debtor's

Petition.

3.8    **Class 8**    Class 8 shall consist of BFS Capital. BFS Capital did not file a proof

of claim in this bankruptcy. This creditor was scheduled as creditor 2.2 on schedule D of

the bankruptcy schedules. This creditor did not file a proof of claim. The According to the

Debtor's Petition, the value of the secured claim is $257,758.00 and the value of the

collateral is $0.00. The listed basis of this claim is a business loan to the Debtor. The

Debtor listed this claim as Contingent, Unliquidated, and Disputed.

3.9    **Class 9**    Class 9 shall consist of all Priority Tax Claims. This class is limited to

the principal and interest components of these claims, as allowed. This class does not

include penalties assessed against the Debtor prior to the order for relief unless the

particular creditor has obtained on order of court allowing penalties because they do not

arise out of actual pecuniary loss. At the time of the filing of this Liquidating Plan, the

following are the listed Priority Tax Claims:

| Name of Creditor | Class | Type of Claim | Amount |
|---|---|---|---|
| Commonwealth of Pennsylvania, Department of Human Services POC #27 | 9 | Priority | $810,695.89 |
| Commonwealth of Pennsylvania, Dept. of Labor & Industry POC #19 | 9 | Priority | $7,617.43 |
| Commonwealth of Pennsylvania, DOR POC #1 | 9 | Priority | $153.12 |
| Internal Revenue Service POC #2 | 9 | Priority | $47,816.90 |
| TOTAL | | | $866,283.34 |

3.10    **Class 10**    Class 10 shall consist of all Executory Contracts entered into by the

Debtor. There are two listed executory contracts. The first is a lease for equipment with

Accelerated Care Plus Leasing Inc. for $600.00 a month. The second is a lease for a

copier with Ricoh USA Inc. Both of these contracts are assumed by the Debtor.

**3.11   <u>Class 11</u>** Class 11 shall consist of the General Unsecured Creditors who have allowed claims against the Debtor arising before the Petition Date. This class is made of general unsecured claims in the approximate amount of $1,613,317.57. Some of the Creditor's Claims in this class are disputed claims. The claims in this Class shall not include any late charges, interest or attorney's fees after the commencement of the chapter 11 case.

**3.12   <u>Class 12</u>.** Class 12 shall consist of the Equity Security Holders of the Debtor at the time of the filing of this case.  This class consists of all rights, claims legal or equitable of the shareholders of the Debtor that arise under or in relation to their rights as stockholders.  Participation in this class shall be identical to the percentage of stock each claimant had as of the date of filing:

**(a)**     Derek Glaser -        100% of issued stock

## <u>ARTICLE 4 -  IMPAIRMENT</u>

The following classes are <u>not</u> impaired under this Plan:

  **Class 1** - Unimpaired

The following classes are impaired under the Plan:

  **Class 2** - Impaired
  **Class 3** - Impaired
  **Class 4** - Impaired
  **Class 5**   Impaired
  **Class 6** - Impaired
  **Class 7** - Impaired
  **Class 8** - Impaired
  **Class 9** - Impaired
  **Class 10**-Impaired
  **Class 11**-Impaired
  **Class 12**-Impaired

## ARTICLE 5 - MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1** The Plan is to be implemented by the liquidation of all stock and or assets in the Debtor and the distribution of the proceeds to the creditors in accordance with the Plan.

The Debtor is in the process of finalizing and executing a Stock Purchase Agreement or any Asset Purchase Agreement for the purchase price of $3,200,000.00. Once the Stock Purchase Agreement has been finalized, the Debtor will file a Motion for Entry of an Order Approving Bidding Procedures for the Sale of Stock or Assets, Including Approval of Proposed Bid Protections ("Bidding Procedures"), followed by a Motion to Sell. Both the Bidding Procedures and Motion to Sell will be subject to the Court's approval.

If approved, the Bidding Procedures contemplate the solicitation of other potential bidders who have or demonstrate an interest in acquiring the assets or stock in the Debtor. This solicitation represents the best method to maximize the value of the Debtor's Assets or Stock for the benefit of all of the Debtor's creditors, and accordingly, is in the best interests of the Debtor, its creditors, and the estate. The solicitation will be limited to only Qualified Bidders, as to be defined in the Bidding Procedures. Each Qualified Bidders shall be afford due diligence access to the Stock through the Bid Deadline.

If one or more Qualified Bids are received, an auction will be conducted at the Sale Hearing. Only Qualified Bidders that have submitted a Qualified Bid(s) will be eligible to participate in the auction. The bidding at the auction shall start at the Minimum Initial Bid, $3,200,000.00. At the auction, competing Qualified Bidders may submit bids for the Assets or Stock in excess of the Minimum Initial Bid, provided that such Minimum Overbid is $3,350,000.00 and each subsequent bids are in increments of at least $10,000.00. At the conclusion of the Auction, or as soon thereafter as the Court deems appropriate, the Court

13

shall determine the highest and best Qualified Bid from the Qualified Bidders.

The closing on this Sale of Assets or Stock between the Debtor and the Successful Bidder shall occur within 30 days after the Bankruptcy Court and the State, respectively, have approved the sale.

The proceeds deposited into the distribution account will be distributed as follows:

1.      Payment of all administrative expenses, including the costs of the administration, the wages accrued as a result of the sale, any taxes which the Debtor owes or will owe as a result of the liquidation sale.

2.      Any excess will be used to pay Class 2, until it is paid in full;

3.      Any excess will be used to pay Class 3, until it is paid in full;

4.      Any excess will be used to pay Class 4, until it is paid in full;

5.      Any excess will be used to pay Class 5, until it is paid in full;

6.      Any excess will be used to pay Class 6, until it is paid in full;

7.      Any excess will be used to pay Class 7, until it is paid in full;

8.      Any excess will be used to pay Class 8, until it is paid in full;

9.      Any excess will be used to pay Class 9, until it is paid in full;

10.     Any excess will be used to pay Class 10, until it is paid in full;

11.     Any excess will be used to pay Class 11, until it is paid in full;

12.     In the event that any excess remains after payment of the prior classes, the excess will be distributed to class 12.

The Debtor will continue making adequate protection payments to Huntington National Bank until they are paid in full.

**5.2** Litigation Necessary or Possible to Consummate Plan.

14

A.  Objection to Claims;

B.  506 Actions to Determine Secured Status;

    1.      BFS Capital
    2.      Bridgeport Capital Funding, LLC '

C.  Any Actions to Enforce the Plan;

D.  Any Chapter 5 actions, if creditors are not paid in full from the sale.


**5.3** <u>Escrow of any Disputed Claim</u>.

(A)      At the time of distribution under the Plan, the Debtor may pay into an escrow account any payment(s) for disputed creditors until such time as a final order allowing that claim is entered.

(B)      The Debtor may escrow any payment to any creditor if there is a possible claim or setoff that may be asserted against that creditor.

(C)      The escrow account shall bear interest.  If the creditor is fully secured, the interest earned shall be the property of the creditor; but that creditor's right to post-Confirmation interest shall be limited to the actual earned interest.  If the disputed creditor is unsecured, the interest shall be the property of the estate.

**5.4** <u>Miscellaneous</u>.

All causes of action, all avoiding powers, all chooses in action of any type, which were the property of the Debtor at the time of the commencement of this case shall remain the property of the Reorganized Debtor under this Plan.

## <u>ARTICLE 6 - PROVISIONS FOR CLAIMS AND EQUITY<br>SECURITY INTERESTS GENERALLY</u>

**6.1**      At the time the Confirmation Order becomes a Final Order, the Debtor and the Reorganized Debtor and Disbursing Agent shall be deemed to have the benefits and

effects of Code Section 1141(a) and (b).

The Reorganized Debtor shall be deemed to have the benefits of Code Section 1141(c) and the Debtor, the Reorganized Debtor shall be, and shall be deemed to be fully discharged and released pursuant to Code Section 1141(d) (1) (A) [discharge of debts] and the rights of Class 3, shall be terminated except as provided for in the Plan and as provided by Code Section 1141 (d) (B).

## ARTICLE 7 - TREATMENT UNDER THE PLAN
## AND PROVISION FOR PAYMENT

**7.1**     Administrative Claims. The Class 1 claims, to the extent each is an allowed administrative claim, shall be paid their principal claim in full without interest on or before the distribution date by a cash payment to the holder of such a claim except as provided below or as otherwise agreed by each member of the class of persons in this class. Professional persons in Class 1 whose claims have been finally approved and allowed by the court pursuant to Code Section 330 or 503 shall be paid on the closing date the amount in cash that has been agreed to by the individual professional persons.  The following claims arising after the filing date and related to the ongoing business expenses of the reorganized Debtor or any successor  or the transferee according to the stated payment terms of such liability:   **(a)** all allowed accounts payable, **(b)** unemployment compensation and related principal withholding taxes, on the obligations, **(c)** all executory contracts, unexpired leases, purchase orders and sales orders, **(d)** all unpaid utility bills, **(e)** the liability for federal and state income taxes or other taxes, up to the maximum amount payable under Class 1 arising in the ordinary course of business, **(f)** fees and expenses of the Debtor's counsel, **(g)** any claim that was given administrative status by the Court during

the Chapter 11 bankruptcy, and **(h)** other professionals for services to be rendered <u>after</u> the closing date in prosecuting any causes of action, prosecuting objections to claims, settling claims or advising the Reorganized Debtor with respect to claims, any other services provided to the purchaser in connection with the implementation for this Plan all subject to court approval, after notice and a hearing.

> **7.2**   <u>**Huntington National Bank**</u>  Its lien will be retained under this plan.

Huntington National Bank will be paid $ 561,964.90 (POC #15) and $ 104.116.27 (POC # 16) plus interest, late charges and fees and costs, including without limitation attorneys' fees and costs which HNB is entitled to under Section 506 of the Bankruptcy Code, as set out in the Cash Collateral Stipulations and Orders, less adequate protection payments; but including allowed counsel fees and costs. The Allowed Secured Claim shall be treated pursuant to the provisions of the Bankruptcy Code §1129 (b) (2) (A) as follows:

> **7.2.1**  <u>**ADEQUATE PROTECTION PAYMENTS.**</u>  The Debtor will make adequate protection payments until the Effective Date.

> **7.2.2**  <u>**TREATMENT**</u>  The Allowed Secured Claim of FNB shall be paid by the Debtor from the proceeds of sale. At the closing of the sale, Huntington National Bank will be paid their allowed claim from the available proceeds of the sale contemplated in this Liquidating Plan, after payment of the Class 1 Administrative Claims. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and the secured claim is paid in full. Once paid in full, their lien will be satisfied.

> **7.2.3**  <u>**WAIVER OF PRE-CONFIRMATION DEFAULTS**</u>   All pre–confirmation defaults will be waived upon the confirmation of the Plan.

> **7.2.4**  <u>**RESTATEMENT OF LOANS**</u> The Loan Documents and terms and conditions

shall be reserved unless where they are in conflict with the terms of this Plan.  Upon

Confirmation of the Plan the Debtor will reaffirm and ratify all of the Loan Documents,

including all terms, conditions and obligations thereunder and further acknowledges and

agrees that the indebtedness under the terms of the Loan Documents as set forth in the

Cash Collateral Stipulations and Orders together with additional interest at the contractual

per diem rate plus late charges and fees and costs, including without limitation attorney's

fees and costs which HNB is entitled to under Section 506 of the Bankruptcy Code.

**7.2.5** <u>**FORBEARANCE.**</u> Provided payments are made to HNB as provided under

the Plan, HNB will forbear from enforcing any guaranty against the guarantor during the

repayment period of the HNB Allowed Secured Claim under the Plan. The guarantor will

execute any agreement that stipulates that no defense, including statute of limitations or

waiver, will occur as a result of HNB accepting this treatment under this Plan of

reorganization. Provided the Reorganized Debtor makes all payments under this Plan and

FNB is paid in full, HNB will waive any claims against the guarantors for any amount in

excess of the Plan payments. HNB will forbear from exercising any execution of its

judgments against the Debtor while the Debtor is in compliance with the Plan.

**7.2.6** <u>**DEFAULT.**</u>  Upon the occurrence of any event of default arising from a failure

to comply with the Plan requirements set forth herein, which is not cured within ten (10)

business days after HNB shall have provided written notice to the Debtor and its counsel

via email of such Event of Default or the failure to cure any other Event of Default within

ten (10) business days after HNB shall have provided written notice to the Debtor and its

counsel via email of such Event of Default, HNB shall be permitted to exercise its

remedies under the Loan Documents and the Judgments, including invoking the

contractual default rate of interest after the default.

**7.3** **Johnson Pharmaceutical Services, Inc.**    The Class 3 secured claim is junior to the secured claim held by Huntington National Bank. This class will be paid their claim in full from the available funds of the sale contemplated in this Liquidating Plan, after payment of the Class 1 and 2 obligations. This money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and their claim is paid in full. Once paid in full, their lien will be satisfied.

**7.4** **Secured and Priority Tax Claims**    The Class 5 will be paid their claim in full from the available funds of the sale contemplated in this Liquidating Plan, after payment of the Class 1, 2 and 3 obligations. This money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and their claim is paid in full. Once paid in full, their lien will be satisfied.

**7.5** **Everest Business Funding**    The Class 5 will be paid their claim in full from the available funds of the sale contemplated in this Liquidating Plan, after payment of the Class 1, 2, 3 and 4 obligations. This money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and their claim is paid in full. Once paid in full, their lien will be satisfied.

**7.6** **Bankdirect Capital Finance**    This Class 6 will be paid their claim in full from the available funds of the sale contemplated in this Liquidating Plan, after payment of the Class 1, 2, 3, 4 and 5 obligations. This money will be distributed to them at the time of

19

Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and their claim is paid in full. Once paid in full, their lien will be satisfied.

**7.7** **Bridgeport Capital Funding, LLC** This creditor was scheduled as creditor 2.3 on schedule D of the bankruptcy schedules. This creditor did not file a proof of claim. The Debtor believes that there is no equity in the purported collateral to support their lien or that it is perfected.  This lien is not being retained under the plan; upon confirmation. Their lien will be released.

To the extent that they have an allowed claim, this money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens.

**7.8** **BFS Capital** This creditor was scheduled as creditor 2.2 on schedule D of the bankruptcy schedules. This creditor did not file a proof of claim.  The Debtor believes that there is no equity in the purported collateral to support their lien or that it is perfected. This lien is not being retained under the plan; upon confirmation. Their lien will be released.

To the extent that they have an allowed claim, this money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens.

**7.9** **Priority Tax Claims** The Class 9 will be paid their claim in full from the available funds of the sale contemplated in this Liquidating Plan, after payment of the Class 1, 2, 3, 4, 5, 6, 7 and 8 obligations. This money will be distributed to them at the time of Closing on the Sale contemplated in this Liquidating Plan. The sale will be free and clear of all liens. Their lien will be retained until the sale is closed and their claim is paid in full.

20

Once paid in full, their lien will be satisfied.

**7.10** **Executory Contracts**  All Executory Contracts are assumed until the sale of contemplated in this Plan. Once the Sale is closed, any unpaid obligation under their executory contract will be paid using any remaining funds available after payment of Class 1, 2, 3, 4, 5, 6, 7, 8 and 9 obligations have been paid their allowed claims.

**7.11** **General Unsecured Claims**. The Class 11 claims will be paid any remaining funds available after the payment of Class 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 obligations have been paid their allowed claims. The proceeds of the Sale contemplated under this Liquidating Plan will net proceeds large enough to pay all allowed claims in this class a dividend of 100% of the claim.

**7.12** **Equity Shareholders of the Debtor.** On the Closing Date of the Sale, all Equity Interests shall be deemed to have been cancelled and extinguished. If the sale is through a stock purchase, all ownership interest in the Debtor will be transferred to the Successful Bidder per the Sales Agreement. For Holders of Equity Interests will receive the any remaining proceeds of the Sale after all creditors have been paid.

## ARTICLE 8 - RETENTION OF JURISDICTION

**8.1** The Bankruptcy Court shall, after the confirmation date and until final consummation, be entitled to exercise exclusive jurisdiction over the following matters:

(a)   To consider any modification of this Plan pursuant to Section 1127 of the Code;

(b)   To determine the allowance of all claims against the Debtor pursuant to Section 502 of the Code;

(c)   To hear and determine any objections filed within thirty (30) days after confirmation date to the allowance of any claim;

(d)     To hear and determine any adversary proceeding or contested matter, controversy, suit or dispute over which the Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 157, 1334;

(e)     To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(f)     To issue such orders as may be necessary for the administration and/or consummation of this Plan, including complaints to determine secured claims;

(g)     To set and determine all professional fees and other costs of administration in this Chapter 11 case; and

(h)     For such other purposes as may be set forth in the Confirmation Order.

## ARTICLE 9 - GENERAL PROVISIONS

**9.1**    <u>Amendments:</u> This Plan may be amended by the Plan Proponent at any time prior to the confirmation date and thereafter as provided in Section 1127 of the Code.

**9.2**    <u>Headings:</u> The headings included in this Plan are for the sake of convenience and reference only and shall not constitute part of this Plan for any other purpose.

**9.3**    <u>Interest:</u>  Except as specifically set forth in the Plan or in any Final Order of the Court entered during this Chapter 11 case, interest shall be deemed not to have accrued with respect to any claim since the filing date and no payment of interest will be made pursuant to the Plan.

**9.4**    This Plan contemplates that the case will be closed and a Final Decree will be entered as soon as all of the following have occurred:

(a)     All fee applications have been filed and approved.   No fee application shall be allowed unless they have been filed prior to forty-five (45) days after the Order of Confirmation is entered;

(b)     All objections to claims and adversary actions are filed and resolved;

(c)     The Debtor has made the first payment to the administrative claimants; and

(d)    The Debtor has complied with the Post-Confirmation Order.

## ARTICLE 10 - AMENDMENT

**10.1**    The proponent of the Plan reserves the right to amend this Plan prior to confirmation.  If there is a substantial event that alters the feasibility of this Plan or if the Plan fails to meet the requirements of 11 U.S.C. § 1122 or if this Plan does not meet the requirements of 11 U.S.C. § 1129, after a ballot of creditors.

**Respectfully submitted,**

**Dated:**  April 22, 2019

**BY:**      /s/ Donald R. Calaiaro
**Donald R. Calaiaro, Esquire, PA I.D. #27538**
**dcalaiaro@c-vlaw.com**
**BY:**      /s/ David Z. Valencik
**David Z. Valencik, Esquire,   PA I.D. #308361**
**dvalencik@c-vlaw.com**

**CALAIARO VALENCIK**
**428 Forbes Avenue, Suite 900**
**Pittsburgh, PA  15219-1621**
**(412) 232-0930**

23

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**In Re:**                                          **Bankruptcy No.** 18-23979 GLT
Lawson Nursing Home, Inc.,                          **Chapter** 11
                            **Debtor.**             **Document No.**


## CERTIFICATE OF SERVICE OF CHAPTER 11 SMALL
## BUSINESS LIQUIDATING PLAN OF REORGANIZATION

I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on April 22, 2019.

**Service by E-mail**:
Lawson Nursing Homes, Inc.; derekglaser@comcast.net
**Service by NEF**:
Larry E. Wahlquist on behalf of U.S. Trustee Office of the United States Trustee;
larry.e.wahlquist@usdoj.gov

The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was: Electronic Notification.

If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the names and addresses of parties served by electronic notice will be listed under the heading "Service by Electronic Notification," and those served by mail will be listed under the heading "Service by First-Class Mail."

**Executed on:**  April 22, 2019          /s/ Donald R. Calaiaro_____
                                          **Donald R. Calaiaro, Esquire, PA I.D. #27538**
                                          **dcalaiaro@c-vlaw.com**
                                          /s/ David Z. Valencik_____
                                          **David Z. Valencik, Esquire,   PA I.D. #308361**
                                          **dvalencik@c-vlaw.com**

                                          **CALAIARO VALENCIK**
                                          **428 Forbes Avenue, Suite 900**
                                          **Pittsburgh, PA  15219-1621**
                                          **(412) 232-0930**