FILED
9/27/19 5:00 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In re: | : | Case No.: | 18-23979-GLT |
| | : | Chapter: | 11 |
| Lawson Nursing Home, Inc. | : | | |
| | : | | |
| | : | Date: | 9/27/2019 |
| *Debtor(s)*. | : | Time: | 10:00 |

## PROCEEDING MEMO

**MATTER:**  #314 - Motion to Sell Property Free and Clear of Liens under
  Section  (540 Coal Valley Rd #2)
    #351 - Ntc of Designation of Jefferson Hills Holdings,
      LLC as Stalking Horse Bidder
    [Response due 9/20/2019]
    #379- Proof of Publication in Pittsburgh Legal Journal
    #380 - Proof of Publication in Pittsburgh Post-Gazette
    #384 - Response filed by Johnson's Pharmaceutical
       Services
    #387 - Stipulation by William G. Krieger and Between
        US Dep of Health and Human Services to
        Extend Response date to 9/24/2019
    #397 - Supplement/Addendum to Response filed
        By Johnson's Pharmaceutical Services
    #390 - Huntington National Bank's Response to
       Chapter 11 Trustees Motion to Sell
    #395 - Stipulation by and Between William G.
         Gregier, Trustee and USA, Department
         of Health and Human Services
   #402 - Notice of Regarding Cancellation of Auction

   #355 - Omnibus Motion to Assume Lease or Executory Contract
      Filed by Trustee
      [Response due 9/20/2019]
    #387 - Stipulation by William G. Krieger and Between
        US Dep of Health and Human Services to
        Extend Response date to 9/24/2019
    #388 - Response filed by PCA Mission Pharmacy

***APPEARANCES***:
  Debtor:       No Appearance
 Trustee:    John Steiner and William G. Krieger
  Creditor:    John Joyce (Huntington Bank) and Zachary Gordon (Trilogy d/b/a P.C.A. Pharm.)
     Other Appearances: Craig Adler (Jefferson Hills Holdings, LLC) Jill Locnikar (Dept. of Health and Human Services)

***NOTES:***

Steiner: Accounts receivable are being excluded from the sale and cure payments will be the responsibility of the purchaser. During the course of this matter there has been substantial notice to all interested parties. Mr. Gleason's Proffer: In an effort to garner interest in these assets, Gleason's company created a "teaser" memorandum with financial data and bidding procedures. Prospective buyers had to sign an NDA to get more info about the sale. Gleason compiled a list of all the nursing

home locations in PA (approx. 700). There were 32 PA nursing home companies identified as potential buyers - targeting PA owners would be the best approach for sale because of the complicated nature of the sale. Gleason reached out to all 32 potential buyers, the teaser memo and NDA was sent to 13 of the potential buyers after they expressed interest. 5 prospective buyer signed the NDAs and accessed the Virtual Data Room (VDR). All information necessary for a prospective buyer to conduct due diligence and to make an educated decision regarding the sale was contained in the VDR. All creditor notices and the bid procedures were listed on the Court's website, were listed in the Pittsburgh Legal Journal, and there was also publication in the Pittsburgh Post Gazette. Mr. Krieger's Proffer: I reached out to my personal contacts as well - at least three large corporations.

Court: I accept the proffer and consider it as part of the record.

Steiner: There was a due diligence period to terminate and the prospective buyer did not exercise that right within the necessary time.

Court: I have no issues with the sale order as amended. To confirm, the due diligence contingency has been satisfied and there are no other impediments to sale at this point?

Alder: There is a licensure contract that we're pursuing. My firm is handling that for the prospective buyer.

Court: Can you speak to the how the transition will impact the residents?

Kreiger: We don't anticipate any issues during the closing process - this whole process has been relatively invisible to the residents so far. We've reduced some staff time during the process, but the prospective buyer has communicated they intend to re-hire most staff. The facility is in good condition and is still running very well.

Alder: The prospective buyer will maintain as many employees as they can. The prospective buyer also has other nursing homes in the area, so they're experienced in these kind of transitions and will have resources to share if needed.

Steiner: Helen Lundsted has been living in an apartment in the facility without payment and has been eating the food and taking advantage of the facility. A state court action has been undertaken to eject her. Other than that we're going full steam ahead towards closing.

Joyce, Gordon, and Locnikar: We have no objections to the sale.

Court: What's left from the distributions? (We will not be holding you to these amounts)

Steiner: Our understanding is from the asset table: we'll have $1.8 mill of proceeds, $1.2 mill of secured claims and claims paid at closing, 600k of proceeds left plus receivables at around $1 mill (free and clear cash), that should cover the administrative and professional costs and fees as well as the post-petition taxes, and then distributions in the realm of 35%-50% - including a large payment to PA Health and Human Services - to unsecured creditors.

Court: Upon review of the record I find the sale satisfies all requirements and has been entered into with good faith. I note that the *Omnibus Motion to Assume Lease or Executory Contract (Amended)* [Dkt. No. 370] was not before the Court today.

### OUTCOME:

1. Trustee's *Motion to Sell Property Free and Clear of Liens* [Dkt. No. 314] is GRANTED. O/E

2. Trustee's *Omnibus Motion to Assume Lease or Executory Contract* [Dkt. No. 355] is GRANTED. O/E

3. Trustee's *Stipulation and Consent* [Dkt. No. 395] is APPROVED. O/E

**DATED:** 9/27/2019